[No. A067903. First Dist., Div. Two. Mar. 18, 1996.]

ENVIRONMENTAL PROTECTION INFORMATION CENTER, Plaintiff and Respondent, v.
DEPARTMENT OF FORESTRY AND FIRE PROTECTION et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Charles W. Getz IV, Assistant Attorney General, and John Davidson, Deputy Attorney General, for Defendants and Appellants.

Robin L. Rivett and Jennifer M. Deming as Amici Curiae on behalf of Defendants and Appellants.

Thomas N. Lippe and Barry H. Epstein for Plaintiff and Respondent.

OPINION

HAERLE, J.—

## I. INTRODUCTION

This is an appeal by the California Department of Forestry and Fire Protection and its Board of Forestry (hereafter respectively CDF and BOF or, collectively, appellants) from a summary judgment entered against them by the lower court in a declaratory relief action brought by respondent (hereafter EPIC). The court's order held that section 1038, subdivision (c), of title 14 of the California Code of Regulations, which purports to exempt timber operations on any parcel of land of less than three acres in size from the requirement of the preparation of a timber harvest plan (hereafter THP), was unauthorized by any provision of the Public Resources Code and hence invalid. Appellants urge that (1) EPIC lacks standing to pursue such a claim and (2) BOF was authorized to issue the challenged regulation. We disagree with both contentions and hence affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 1973 the Legislature passed the Z'berg-Nejedley Forest Practice Act (hereafter the Act), which now comprises section 4511 et seq. of the Public Resources Code.[1] Among many other things, the Act requires the preparation and filing of a THP by any owner of property upon which timber operations are contemplated. (See §§ 4581-4594.7.)

After an applicant submits a THP, CDF must review it to determine whether it complies with the substantive provisions of the Act, with various regulations adopted under the Act (see, e.g., Cal. Code Regs., tit. 14, § 895.1 et seq.), and with applicable portions of the California Environmental Quality Act (see § 21000 et seq.; see also *Sierra Club* v. *State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1228-1229 [32 Cal.Rptr.2d 19, 876 P.2d 505].)

Additionally, other state and county agencies review a THP, and the public must be provided an opportunity to review and comment on it. (See § 4582.6.) CDF is required to consider the recommendations made by other agencies, both state and county, and any input provided as a result of public comment, and to respond thereto. (See § 4582.7.)

While section 4581 sets forth the general proposition that a THP is a prerequisite to the conduct of "timber operations," a subsequent section, section 4584, authorizes the BOF to adopt regulations which exempt certain

---

[1] All further statutory references are to the Public Resources Code, unless otherwise indicated.

specific types of timber harvesting operations from that requirement. As originally enacted in 1973, that provision permitted the board to authorize a very limited exemption with respect to persons engaging in "the planting, growing, nurturing, shaping, shearing, removal, or harvest of immature trees for Christmas trees or other ornamental purposes or of dead, dying, or diseased trees of any size, on determining such exemption is consistent with the purposes of this chapter." (Stats. 1973, ch. 880, § 2, p. 1625.)

Subsequent to 1973, the Legislature amended section 4584 five separate times, each time adding new specific exemptions to the general requirement of a THP. These amendments occurred in 1975, 1987, 1989, 1992, and 1994. The current version of section 4584 contains nine separate exemptions which BOF *may* authorize by regulation.

In 1974, shortly after passage of the Act, BOF adopted the predecessor of California Code of Regulations, title 14, section 1038, subdivision (c) (hereafter rule 1038(c)), the rule at issue in this case, excusing persons owning three acres or less of property from having to comply with the THP requirement of section 4581. Such persons do, however, remain subject to all other applicable timber cutting and environmental protection rules. (See Cal. Code Regs., tit. 14, § 1038.)

EPIC filed its complaint for declaratory and injunctive relief in February of 1994. In June of that year it filed a motion for summary judgment and for the issuance of declaratory and injunctive relief that would invalidate the present rule 1038(c) on the basis that it was adopted in excess of BOF's authority under the Act. Respondent's motion was supported by a statement of undisputed facts which, among other things, noted that exemptions authorized by CDF for timber operations on parcels of 3 acres or less had increased from 187 in 1989 to 794 in 1991, 1,063 in 1992 and 2,750 in 1993. Appellants opposed the motions with their respective pleadings and a statement of material facts and the matter was then submitted to the lower court. On September 27, 1994, that court issued its order granting EPIC's motion, declaring rule 1038(c) to be invalid, and rejecting appellants' challenge to EPIC's standing to bring the action under Government Code section 11350. This timely appeal followed.

## III. Discussion

### A. *Standard of Review*

■   The standard of review in summary judgment cases is that of independent review. (See *Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511-1515 [285 Cal.Rptr. 385]; see also 1 Eisenberg et al.,

Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1995) ¶ 8:167 et seq., p. 8-66.2 et seq.) Thus, we must apply the same type of analysis mandated of the trial court under Code of Civil Procedure section 437c, limit our review to the record as compiled in that court, and grant the motion only if we determine both that no triable issue of material fact exists and that, in light of the undisputed material facts, EPIC is entitled to prevail.

B.  *Standing*

■    EPIC filed its action in the court below under Government Code section 11350 which, in material part, provides that "[a]ny interested person may obtain a judicial declaration as to the validity of any regulation by bringing an action for declaratory relief in the superior court in accordance with the Code of Civil Procedure." (Gov. Code, § 11350, subd. (a); see also Code Civ. Proc., § 1060.) Appellants assert (a) that EPIC's complaint and subsequent pleadings failed to demonstrate that it had the requisite interest, or (b) at the minimum, the trial court should have denied summary judgment because a triable issue of fact existed as to EPIC's "interest" with respect to the challenged regulation.

Three cases, discussed and analyzed extensively by the parties, deal with standing to sue under Government Code section 11350 and its predecessor.[2] The first of these chronologically, and the one upon which appellants chiefly rely, is *Associated Boat Industries* v. *Marshall* (1951) 104 Cal.App.2d 21 [230 P.2d 379] (hereafter *Marshall*). There, we held that a trade association which was composed of members subject to the challenged regulation, but which itself was not so subject, was not an "interested person" under the statute. We held: "Appellant's standing is a purely representative one, acting on behalf of its members, since appellant is not itself subject to the regulations sought to be attacked and cannot be legally affected by their enforcement. We are satisfied that it is not an 'interested person' within the meaning of the section under which it attempted to proceed." (*Id.* at p. 23.)

A similar factual situation was presented in a case decided more than 20 years later, *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724] (hereafter *Residents*). There, the plaintiff was a nonprofit civic corporation whose membership consisted of approximately 300 families resident in the Beverly Glen area of Los Angeles

---

[2]Government Code section 11350 was adapted in 1979 and has been amended several times since. It was derived from former Government Code section 11440, which was enacted in 1947 and amended in 1953. (See Stats. 1979, ch. 567, § 1, p. 1792; Stats. 1947, ch. 1425, § 12, p. 2990; Stats. 1953, ch. 515, § 2, p. 1755.) Former section 11440 of the Government Code is the provision referred to in this section of this opinion as the "predecessor" to Government Code section 11350.

who were suing both the city and a land developer for both declaratory relief and mandamus seeking to invalidate a conditional use permit granted by the city to the developer of a new residential subdivision, a subdivision which the plaintiff contended was inconsistent with the existing city master plan. The superior court had granted summary judgment to the defendants on the ground, among others, that the plaintiff corporation lacked standing. The defendants argued that (a) the Los Angeles tax and title records established that the plaintiff corporation owned no real property which could be impacted by the development, and (b) the fact that its members might own such property did not convey standing on it as their putative representative.

The Court of Appeal disagreed with these arguments. It noted that the case was (in part) one in mandamus, observed the trend toward relaxing the standing requirement in "public interest" cases, and then held that the fact that the plaintiff's pleading adequately alleged that its members would suffer injury from the planned development was a sufficient basis upon which to find standing. It stated: "Defendants' declarations in this case, showing that Residents does not own any property in Los Angeles County and is not a taxpayer therein, negate any injury to *Residents itself* by reason of the city's granting of a conditional use permit to Plywood. But those declarations do not in any way negate the absence of any injury to Residents' members. Since Residents has alleged that its members suffered injuries, since it is clearly inferable that Residents seeks to represent those members, and since we have held that Residents had standing to seek redress for the injuries allegedly suffered by its members, defendants' declarations are insufficient to sustain the summary judgment." (34 Cal.App.3d at p. 128, fn. omitted, italics in original.)

The court did not ignore our 1951 holding in *Marshall*, but it clearly did not agree with it. It suggested, rather, that our distinguished predecessors' "focus on the word 'interested' alone is too narrow." (*Residents, supra,* 34 Cal.App.3d at p. 125.) Rather, the *Residents*' court continued, the focus should be on whether *either* the plaintiff *or its members* might be impacted by the challenged administrative action. (*Id.* at p. 126.)

Upon reflection, we agree with the *Residents* court and disapprove of our 1951 decision in *Marshall*. In our view it simply no longer makes good sense to draw a hard and fast line between an organization, particularly a nonprofit one, and its members for purposes of analyzing whether that organization is an "interested party" for purposes of Government Code section 11350. Accordingly, we now hold, consistent with the *Residents* court, that a party may be an "interested" person for purposes of Government Code section

11350 if either it or its members is or may well be impacted by a challenged regulation.

The final of the three cases principally discussed by the parties (and our independent research has revealed no others of any significance under Government Code section 11350 or its predecessor) is *Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1977) 74 Cal.App.3d 150 [141 Cal.Rptr. 474] (hereafter *PLF*). There, the plaintiff (which, ironically enough, is an amicus curiae in this case on the side of appellants) sued for declaratory relief to overturn a "precedent benefit decision" of the defendant board that one Thurman Carroll, an "unemployed gardener and home caretaker" from Marysville was eligible for unemployment benefits. The plaintiff asserted that this finding was incorrect because Carroll had not adequately pursued possible farm labor employment as the local employment development department office had required him to do. It noted that two lower level administrative adjudications had found him ineligible for benefits because of his lack of effort in seeking such employment.

As might be expected, the defendant board contested the Pacific Legal Foundation's status as an interested party, and the lower court agreed with it that the Pacific Legal Foundation lacked such standing. The Third District, albeit with a vigorous dissent, disagreed. It held that, inasmuch as the Pacific Legal Foundation had pleaded that it, too, was an employer and subject to the defendant board's overall, long-term regulation (including its precedent decisions), it qualified as an interested party under the applicable statute.[3] It held: "We acknowledge the fundamental principle that when a regulation (the precedent benefit decision) is challenged, the person asserting the challenge must be a person or organization who is subject to the regulation or affected by it. [Citation.] By its complaint, plaintiff alleges that it employs 32 persons. Such employees are subject to dismissal and have the right of personal termination of employment. They are therefore eligible, under the Unemployment Insurance Code, to seek unemployment insurance. As such, the employer as well as the employee are affected by precedent benefit decisions relating to eligibility for insurance. Although [the precedent benefit decision] is not directly addressed to plaintiff as a party, its effect may be applicable to it in the future in the event of termination of employment by an employee." (*PLF*, *supra*, 74 Cal.App.3d at pp. 154-155.)

Again, the court did not ignore our decision in *Marshall*, but held that it "was limited to the question of whether an incorporated trade association,

---

[3]In that case, the statute at issue was Unemployment Insurance Code section 409.2, which the court held was substantively similar to the predecessor to Government Code section 11350.

whose members are subject to the regulations attacked but which itself is not subject to those regulations, is an interested person within the meaning of the statute. In the present instance, Pacific Legal Foundation, as a nonprofit California corporation and employer, is or could be subject to the effects of [the precedent benefit decision]." (*PLF, supra*, 74 Cal.App.3d at p. 156.)

In this case, EPIC alleged in the court below that it "is a nonprofit corporation formed to promote environmental values and environmental protection" and "has 450 members, the majority of whom reside in Sonoma, Mendocino and Humboldt Counties." It further alleged that it is "a resident of the State of California beneficially interested in the aesthetic enjoyment and continued productivity of the land, in the preservation of wildlife species at self-perpetuating population levels, and in environmental protection."

The latter allegation is, moreover, amply supported by judicial records. EPIC is no latecomer to environmental litigation; the records of this district alone reveal, in addition to the instant case, no less than 10 filings by EPIC in environmental litigation, including *Environmental Protection Information Center, Inc.* v. *State Bd. of Forestry* (1993) 20 Cal.App.4th 27 [24 Cal.Rptr.2d 344], *Environmental Protection Information Center, Inc.* v. *Maxxam Corp.* (1992) 4 Cal.App.4th 1373 [6 Cal.Rptr.2d 665], and *Environmental Protection Information Center, Inc.* v. *Johnson* (1985) 170 Cal.App.3d 604 [216 Cal.Rptr. 502]. EPIC was also a plaintiff in *Sierra Club* v. *State Bd. of Forestry, supra*, 7 Cal.4th 1215, 1224. We make this point not to imply a ruling that being a plaintiff in prior litigation entitles one, ipso facto, to standing in subsequent litigation, but only to stress that existing court records confirm that this respondent has shown itself to be a genuinely concerned party regarding environmental issues in our state.

After reiterating that the bulk of its members reside in three of this state's major timber-producing counties, EPIC argues that the practical effect of rule 1038(c) has been to deprive it and its members of the right to inspect and comment on THP's before "timber operations" take place on parcels three acres or smaller. (See §§ 4582.6 and 4582.7.) We think this argument has considerable merit. To use the language of the *PLF* court, the fact that EPIC and its members are, by virtue of rule 1038(c), denied the ability to review and comment on THP's means, at the very minimum, that they "could be subject to" the challenged regulation and hence must be considered interested parties for purposes of section 11350 of the Government Code. (*PLF, supra*, 74 Cal.App.3d at p. 156.)

Putting matters another way, if the Pacific Legal Foundation had, by virtue of its 1977 status as an employer of 32 employees, standing to contest

the eligibility of an unemployed Marysville "gardener and home caretaker" to unemployment insurance benefits in the *PLF* case, then surely a bona fide environmental organization with several hundred members in three major timber producing counties has standing to contest both its and their denial of the right to see, inspect and comment on THP's for what has increasingly become a significant quantity of "timber operations."[4]

Appellants urge us to digress from established California law regarding standing and import into our law principles derived from such United States Supreme Court cases as *Lujan* v. *Defenders of Wildlife* (1992) 504 U.S. 555 [119 L.Ed.2d 351, 112 S.Ct. 2130]. That case held that an organization challenging governmental action affecting the environment lacked standing to sue. It did so, however, with particular reference to the "case and controversy" language of article III of the federal Constitution and the long line of cases respecting that language, cases which, among other things, have required that the plaintiff show not only "injury in fact" but also injury which is both "concrete and particularized," "actual or imminent," causally connected with the conduct complained of, and "likely" as opposed to "speculative." (See 504 U.S. at pp. 560-561 [119 L.Ed.2d at p. 364].) Whether this should be the law in California, it clearly is not, even in the few cases—shortly to be discussed—arising under Government Code section 11350 and its predecessor. (See contrasting federal and California law in this area, Myers, *Standing in Public Interest Litigation: Removing the Procedural Barriers* (1981) 15 Loy. L.A. L.Rev. 1, 20-22; and *Stocks* v. *City of Irvine* (1981) 114 Cal.App.3d 520, 528-537 [170 Cal.Rptr. 724].) We perceive neither justification nor authorization for us to import this federal law principle into our jurisprudence, and we accordingly decline the Attorney General's invitation to do so.

C.  *The Validity of Rule 1038(c)*

In defense of rule 1038(c), appellants and their supporting amicus curiae, the Pacific Legal Foundation, essentially argue three points: (1) a court gives great deference to an agency's regulations which interpret and

---

[4]This disposition of the standing issue makes it unnecessary for us to deal with EPIC's contention that, as in "public interest" cases where a writ of mandate is sought, the standing rules should likewise be relaxed in similar cases where declaratory relief is sought. They cite, as examples of the former line of cases, *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 272 [118 Cal.Rptr. 249, 529 P.2d 1017] and *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 439 [261 Cal.Rptr. 574, 777 P.2d 610]. However, as to whether this principle is applicable to declaratory relief cases, see *American Friends Service Committee* v. *Procunier* (1973) 33 Cal.App.3d 252, 255-256 [109 Cal.Rptr. 22], overruled on other grounds in *Engelmann* v. *State Bd. of Education* (1991) 2 Cal.App.4th 47, 59 [3 Cal.Rptr.2d 264].

apply a law the agency is responsible for enforcing, (2) the Act expressly authorizes the BOF to adopt regulations interpreting and applying it, and (3) the Legislature has, many times since the initial formulation of what is now rule 1038(c), amended the Act with either actual or presumed knowledge of the rule, action which can and should be construed as approval of the regulation.

EPIC responds that (1) the principle concerning deference to an administrative agency's interpretation of its own enabling statute does not apply where, as here, the issue is whether the statute authorizes the regulation at issue, (2) the statutory provisions authorizing the issuance of regulations by BOF do not validate this regulatory grant of an exemption because a later and very specific section of the same statute deals in detail with the subject of exemptions from the THP requirement, and (3) the "implied legislative approval" principle is inapplicable in these circumstances. For the reasons we will develop below, we agree with EPIC's positions on these issues.

1.

A leading and recent case exemplifying the rule of judicial deference to an administrative agency's interpretation of its "own" law involves both the same law and same agency as is involved here. That case is *Public Resources Protection Assn. v. Department of Forestry & Fire Protection* (1994) 7 Cal.4th 111 [27 Cal.Rptr.2d 11, 865 P.2d 728] (hereafter *PRPA*). At issue there was the approval by CDF of a particular THP filed by Louisiana Pacific Corporation and, more specifically, whether and to what extent the trial court could rely upon regulations adopted by the BOF purporting to interpret and apply section 4583. The Supreme Court expressly noted the authority provided in the statute for the regulations at issue both in that and the instant case: "The Legislature has vested in the board the authority to adopt forest practice rules and regulations 'to assure the continuous growing and harvesting of commercial forest tree species and to protect the soil, air, fish, and wildlife, and water resources . . . .' (§ 4551.) It has expressly granted to the board the power to continuously review and revise those rules (§ 4553), . . ." (7 Cal.4th at p. 120.) It stated the general rule to be as follows: "[I]t is the board, and not the courts, that establishes forest policy. [¶] . . . [I]n the absence of an ambiguity, we will uphold the board's rules as they are written unless we find them to be beyond the board's authority." (*Ibid.*)

██ Although not specifically so phrased by the court in *PRPA*, the ruling in that case is certainly consistent with, and undoubtedly derived from, the more basic rule urged on us by appellants that "[t]he contemporaneous

administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized." (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793].)

However, as EPIC points out, the fly in this particular ointment is the last word in that quotation: "unauthorized." For the applicable principle changes a great deal when what is involved is a challenge to the *very authority of the agency to even issue the challenged regulation*, an issue not at all implicated in *PRPA*. This difference in the applicable rule is manifested by decisions such as *Physicians & Surgeons Laboratories, Inc.* v. *Department of Health Services* (1992) 6 Cal.App.4th 968 [8 Cal.Rptr.2d 565], where the court summarized the competing rule to be: "[T]he rulemaking authority of an agency is circumscribed by the substantive provisions of the law governing the agency. [Citation.] Thus, the first task of the reviewing court is to decide that the agency reasonably interpreted its legislative mandate as regulations that alter or amend the statute or enlarge or impair its scope are void. [Citation.] This standard of review is one of respectful nondeference. [Citation.]" (*Id.* at p. 982; see also *Henning* v. *Division of Occupational Saf. & Health* (1990) 219 Cal.App.3d 747, 757-758 [268 Cal.Rptr. 476]; *Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 390-391 [211 Cal.Rptr. 758, 696 P.2d 150].

We think it is the latter rule that is applicable in this case; the challenged regulation is not one merely interpreting and applying a broad statutory provision, but one which is challenged regarding its fundamental legitimacy. The applicable standard of review is, therefore, "respectful nondeference."

Evaluated under this standard, we think that, when the statute is considered as a whole, there is merit to EPIC's challenge. It is true that sections 4551 through 4555 give the BOF authority to adopt "forest practice rules and regulations . . . in accordance with the policies set forth in Article I . . . of this chapter . . . ." (§ 4551.) And it is also true that the next section identifies the principal subject to which such rules "shall apply" to be "the conduct of timber operations" including, among many other things, "the preparation of timber harvesting plans." (§ 4551.5.) But nothing in this very general grant of regulatory authority speaks of exemptions to the THP requirement, while a later, very specific provision, section 4584, speaks precisely of that subject.

That section, as presently worded, deserves to be set forth in substantial text. It provides in relevant part: "Upon determining that the exemption is

consistent with the purposes of this chapter, the board may exempt from this chapter or portions thereof, any person engaged in forest management whose activities are limited to any of the following: [¶] (a) The cutting or removal of trees for the purpose of constructing or maintaining a right-of-way for utility lines. [¶] (b) The planting, growing, nurturing, shaping, shearing, removal, or harvest of immature trees for Christmas trees or other ornamental purposes or minor forest products, including fuelwood. [¶] (c) The cutting or removal of dead, dying, or diseased trees of any size. [¶] (d) Site preparation. [¶] (e) Maintenance of drainage facilities and soil stabilization treatments. [¶] (f) Timber operations on land managed by the Department of Parks and Recreation. [¶] (g) The one-time conversion of less than three acres to a nontimber use. [¶] (h) Easements granted by a right-of-way construction agreement administered by the federal government if any timber sales and operations within or affecting these areas are reviewed and conducted pursuant to the National Environmental Policy Act of 1969 [citation]. [¶] (i) The cutting, removal, or sale of timber or other solid wood forest products from the species . . . (Pacific yew) . . . ." (§ 4584.)

Manifestly, the latter statute deals, and deals very explicitly, not just with the subject of exemptions from the requirement of THP's but with the even narrower subject of what the BOF may do regarding such exemptions. The grant of authority in sections 4551 and 4551.5 is, by contrast, simply fairly standardized and patently nonspecific provisions regarding the authority of an administrative agency to adopt regulations. The principle applicable to this situation was set out by our Supreme Court in *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190 [132 Cal.Rptr. 377, 553 P.2d 537] (hereafter *Wildlife Alive*). There, the California Fish and Game Commission asserted that it was exempt from the requirements of the California Environmental Quality Act. The court disagreed, holding: "We note further that the Legislature has provided for a number of specific exemptions from CEQA [citation], none of which are expressly applicable to the commission. Under the familiar rule of construction, *expressio unius est exclusio alterius*, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Id.* at p. 195.)

We conclude that the rule of *Wildlife Alive* applies here. When the Legislature has so directly and in such detail dealt with the subject of what BOF may do regarding authorizing exemptions to the requirement of filing a THP, we cannot agree with appellants that the broad general grant of authority in section 4551 et seq. gives the BOF the authority to materially broaden those exemptions by regulation. This is particularly so when section

4584's extended list of circumstances as to which BOF "may" grant exemptions has been considered and enlarged *five* times by the Legislature.[5]

### 2.

But, say appellants and the Pacific Legal Foundation, it is just this amendment/reenactment process which validates rule 1038(c), because that process establishes either implicit (appellants) or explicit (the Pacific Legal Foundation) knowledge by and approval of the challenged regulation by the Legislature. They are, of course, attempting to rely upon the principle that Legislature's continued reenactment of a law with a given "interpretative" regulation in place may be construed as de facto approval of the latter.

The most recent case from our Supreme Court to articulate this rule is *Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1017-1018 [9 Cal.Rptr.2d 358, 831 P.2d 798] (hereafter *Moore*). There, the court was faced with an attack as to the validity of a State Board of Accountancy regulation (Regulation 2) dealing with the public usage of the term "accountant" or "accounting." The court stated the rule as follows: "As further evidence that Regulation 2 is consistent with the legislative intent behind section 5058, it is significant that in the nearly half a century since the Board adopted the regulation, shortly after enactment of the statutory provision, the Legislature has not sought to amend section 5058 to defeat the Board's interpretation of the scope of its authority under section 5058. Although the Legislature twice amended section 5058, first in 1959 (Stats. 1959, ch. 310, § 42, p. 2228) and again in 1979 (Stats. 1979, ch. 25, § 1, p. 70), the substantive provisions with which we are here concerned have remained *unchanged* in the 44 years since the Board adopted Regulation 2. In this regard, a presumption that the Legislature is aware of an administrative construction of a statute should be applied if the agency's interpretation of the statutory provisions is of such longstanding duration that the Legislature may be presumed to know of it. [Citations.]" (2 Cal.4th at pp. 1017-1018.) This court has also applied this rule. (See, e.g., *Napa Valley Educators' Assn.* v. *Napa Valley Unified School Dist.* (1987) 194 Cal.App.3d 243, 252 [239 Cal.Rptr. 395].)[6]

Amicus curiae the Pacific Legal Foundation takes matters one step further. It refers us to the circumstances surrounding a 1982 amendment to the Act,

---

[5]Appellant notes that it is not literally correct that section 4584 is the exclusive place wherein exceptions to the THP requirement are listed, pointing out that section 4628 also contains two exceptions. The point merits little discussion: the legal principle set forth in *Wildlife Alive, supra,* does not depend on the specific exemptions being listed in one, rather than two, places. In any event, the exemptions in section 4628 are statutory while section 4584 speaks, and speaks exclusively and in detail, of what *the board* may exempt.

[6]EPIC counters this principle by citing such other Supreme Court cases as *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 300-301 [250 Cal.Rptr. 116, 758 P.2d

an amendment adding section 4516.5 allowing individual counties to regulate, to some extent, the conduct of timber harvesting in their jurisdiction. The new section specifies that the counties must take any such action by way of recommendations to the BOF. However, the provision contains an exception—codified as section 4516.5, subdivision (f)—which provides that the section does not apply to timber operations on parcels of less than three acres and which are not zoned timberland preserve.

When the statute adding section 4516.5 was on the Governor's desk for signature, the sponsor, Senator Keene, wrote the Governor urging his signature. He stated: "Counties would continue to exercise permit authority over any timber harvest on land zoned 'residential' or on any acreage less than 3 acres not zoned 'TPZ.' The Forest Practices Act exempts parcels of less than 3 acres from timber harvest plans, so it is correct that counties continue to have authority over these small parcels *not* regulated by state forest rules."

With this evidence as a backdrop, the Pacific Legal Foundation reminds us of the corollary rule noted in *Moore*: "Such a presumption should also be applied on a showing that the construction or practice of the agency has been made known to the Legislature." (*Moore, supra*, 2 Cal.4th at p. 1018.) This letter, the Pacific Legal Foundation argues, shows that the Legislature had actual knowledge of rule 1038(c)'s exemption.

There are, however, at least two weaknesses to this argument, weaknesses which in combination render it unpersuasive. In the first place, we might be more inclined to construe Senator Keene's letter as some evidence of "legislative knowledge" if the Senator had understood matters correctly. However, he did not: his letter speaks of an exemption contained in the "Forest Practices Act" when that is simply not the case. Clearly, the Senator was misinformed as to the content of the Act or, possibly, confused rule 1038(c) with the Act itself. Additionally, and bearing in mind that what the

58], and *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 923 [221 Cal.Rptr. 575, 710 P.2d 375], for the proposition that more than "mere silence" from the Legislature is required before "acquiescence is elevated into a species of implied legislation." There is, we suggest, no basic conflict between the two principles. That of *Moore* obtains when the circumstances are legislative reenactments of a statute as to which the relevant administrative agency has, prior thereto, issued an explanatory or interpretative regulation; the latter rule appears to apply when, by contrast, what is involved is a court decision and then later legislative reenactment or amendment of the relevant statute.

One additional point should be made concerning the *Moore* principle: as the quotation from it set forth above makes clear, it is commonly used as "further evidence" of Legislative intent, and seldom if ever as the key factor upon which a finding of legislative intent is based. Appellants cite us to practically no other evidence of legislative intent beyond the "reenactment" point and a declaration of a CDF employee with which we deal, *post.*

Senator was promoting was legislation to increase the authority of *counties* regarding this process, nothing in his letter can be construed as approving —or even expressing an opinion regarding—a blanket three-acre exemption at the *state level.*

But there is a more basic problem with the argument concerning a presumption of legislative approval. First of all, it is important to stress that it is a presumption only. It may, therefore, be rebutted. Unfortunately for appellant's position, it is clearly rebutted by indicia of a contrary legislative intent.

The first of these indicia is contained in the self-same section 4516.5 just discussed. That provision, as noted, injects a certain degree of local government control into the entire THP equation, and does so by, inter alia, permitting boards of supervisors to make recommendations to the BOF regarding "additional rules and regulations for the content of timber harvesting plans and the conduct of timber operations to take account of local needs." (§ 4516.5, subd. (a).) Then, as already noted, subdivision (f) provides: "This section does not apply to timber operations on any land area of less than three acres and which is not zoned timberland production." (§ 4516.5, subd. (f).) Clearly, the language of section 4516.5, subdivision (f), would not be necessary if rule 1038(c) were both known to and approved by the Legislature, because in such a case *all* parcels of less than three acres, whether zoned for timberland production or not and whether in counties recommending such "additional" rules and regulations or not, would be exempted from any THP requirement.

Just in case there was any doubt that this was the Legislature's view of matters, the immediately following provision, section 4516.6 (also added in 1984), makes matters even clearer. That section provides that, in counties following the section 4516.5 procedure, there must be a delay between the date of filing of a THP and the commencement of operations, a delay to provide an opportunity for "adequate public review and comment." (§ 4516.6, subd. (a).) In so doing, the language of section 4516.6 makes clear that both its provisions and that of section 4516.5 encompass the THP requirement. And it, too, goes on to provide an exception, in its subdivision (f), for "timber operations on any land area of less than three acres and which is not zoned for timberland production" (§ 4516.6, subd. (f)), an exception that would rather clearly seem to be unnecessary were rule 1038(c) known to and approved by the Legislature, as appellants argue.

Appellants' principal evidence in support of their position that the Legislature both knew and approved of rule 1038(c) is a declaration submitted to

the trial court by a CDF functionary which, among other things, says: "The fact that the Board of Forestry authorized Exemptions on parcels of less than three acres has been reported in the Forest Practice Annual Report since 1977. This report is sent to the Legislature and copies are supplied to the Legislative Committees with oversight of the Forest Practice program." However, no sample of any such report was attached to the pertinent declaration nor are we advised at all of the method and extent of its circulation to the Legislature. That declaration is, therefore, completely inadequate evidence of legislative knowledge much less approval of the rule in question.

In sum, neither the Keene letter nor the CDF functionary's declaration nor both in combination come close to establishing legislative knowledge and approval of rule 1038(c). In short, and as in the recent case of *Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1604-1605 [49 Cal.Rptr.2d 302], ". . . there has been no showing in this record that the Legislature has in fact been aware of [the rule in question] . . . . Accordingly, here we decline to equate legislative inaction with legislative approval."

In contrast, and for the reasons just outlined, the Legislature's 1984 actions in enacting sections 4516.5 and 4516.6, especially subdivision (f) of each statute, point quite strongly in the opposite direction.

In conclusion, and based on the several considerations discussed above, we agree with the trial court that rule 1038(c) was in excess of BOF's statutory authority.

## IV. CONCLUSION

The judgment appealed from is affirmed.

Kline, P. J., and Smith, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 12, 1996.