518 S.E.2d 639

**WEST VIRGINIA ALCOHOL BEVER-
AGE CONTROL ADMINISTRATION
and Division of Personnel, Appellees,**

v.

**Sherry Hunt SCOTT, Appellant.**

No. 25479.

Supreme Court of Appeals of
West Virginia.

Submitted April 14, 1999.

Decided June 18, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Jeffrey G. Blaydes, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellees.

Marvin W. Masters, Esq., Paula L. Wilson, Esq., Masters & Taylor, Charleston, West Virginia, Attorneys for Appellant.

**PER CURIAM:**

This is an appeal by Sherry Hunt Scott (hereinafter "Appellant") from a June 1, 1993, order of the Circuit Court of Kanawha County reversing a determination of the West Virginia Education and State Employees Grievance Board (hereinafter "Board") in favor of the Appellant. The Appellant contends that the lower court erred in reversing the Board and in ruling that the Alcohol Beverage Control Administration (hereinafter "ABCA" or "Appellee") properly discharged the Appellant from employment. We reverse the determination of the lower court and remand with directions to reinstate the decision of the Board.

### I. Facts

The Appellant was employed with ABCA in the position of Executive Secretary to the Commissioner in 1978. In 1986, she was transferred to the position of Steno–Secretary III with the Stores Division of ABCA. The West Virginia Legislature required the closure of the State's liquor stores through legislation passed in 1990. In July 1990, the ABCA submitted a layoff plan to the Director of the Division of Personnel, Mr. Michael T. Smith, in accordance with the requirements of Section 13.04 of the Administrative Rules and Regulations of the West Virginia Division of Personnel.[1] Mrs. Scott was not included in this plan, either by name, position, or tenure. The plan specified that ABCA store managers, assistant store managers, cashiers, clerks, and utility workers were to be. laid off. On July 23, 1990, Mr. Smith notified the ABCA that the State Personnel Board had approved the reduction-in-force plan, to be effective from

---

1. Section 13.04 provides as follows:

(a) When it becomes necessary by reason of shortage of work or funds, to permit reinstatement of employees on the release from periods of military service in the armed forces of the United States or to implement the provisions of this subsection, the appointing authority may initiate a layoff in accordance with the provisions of this rule. Prior to the separation or involuntary demotion of any employee by layoff, the appointing authority shall file with the director a proposed plan which shall include:

1. A statement of the circumstances requiring the layoff.
2. The organizational unit(s) in which the proposed layoff will take place.
3. A list of the employees in each class affected by the layoff in the order or retention.

(b) It shall be the duty of the director to verify the details on which the lists are based and to notify the appointing authority in writing of the plan's approval.

(c) The plan followed by the appointing authority shall be available, upon request in writing, to any employee or adversely affected former employees.

(d) Organizational unit. The appointing authority shall submit to the State Personnel Board for approval a description of the unit or units to which a layoff will apply. The organizational unit may be an entire agency, division, bureau or other organizational unit.

....

(f) Bumping rights. A permanent employee who is to be laid off may request an involuntary demotion to any class in the occupational group in the same organizational unit unless the results thereof would be to cause the layoff of another permanent employee who possesses greater seniority than the employee who is exercising the request for involuntary demotion.

....

(i) Reporting period. The appointing authority shall report the names of all employees who are to be laid off to the Board in writing no later than the date notification is mailed to the employee of such layoff....

September 4, 1990, through October 31, 1990.[2]

On March 20, 1991, the ABCA Commissioner, Mr. Harry G. Camper, sent Mrs. Scott a certified letter notifying her that her position would be eliminated on April 30, 1991. On April 17, 1991, Mr. Camper requested approval of a second reduction-in-force plan involving certain additional employees, including the Appellant. On April 23, 1991, the Appellant filed a grievance with the Board, alleging that she had been improperly terminated and requesting retention of her job, or, in the alternative, an opportunity to "bump"[3] into another position for which she had seniority.

On May 21, 1992, the Board found in favor of the Appellant and ordered ABCA to reinstate her to her former position or a comparable position, with back pay minus any appropriate set off. The Board further found that the ABCA had violated Section 13.04. The Board reasoned that "[t]he failure of ABC and Personnel to include Grievant's name, position and tenure in the approved layoff plan as required by subsection 13.04(a)(3) of the reduction-in-force regulation rendered her layoff invalid and unlawful."

On June 1, 1993, the lower court, Judge Lyne Ranson presiding, reversed the Board's decision, reasoning that this Court's pronouncements in *West Virginia Department of Health v. Mathison*, 171 W.Va. 693, 301 S.E.2d 783 (1983), permitted some latitude to the ABCA in complying with the governing rules of layoff procedure. The lower court found that the ABCA had substantially complied with the requirements of Section 13.04

and that the Appellant's termination was properly undertaken.[4]

In her appeal to this Court, the Appellant contends that the Board's decision was appropriate and that the lower court exceeded the proper scope of review by reversing the Board's decision.

## II. Standard of Review

■ In syllabus point one of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989), we explained that "[a] final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to *W.Va.Code,* 18–29–1, et seq. (1985), and based upon findings of fact, should not be reversed unless clearly wrong."

This matter is properly divisible into two related inquiries: first, the factual dispute concerning the Appellant's status within the organizational structure of ABCA, as may affect her "bumping" rights; and second, the legal determination regarding the ABCA's substantial compliance with the governing regulations.

## III. Status Within Organizational Structure

■ The determination of whether the Appellant was an employee within the Stores Division or within the central office is pivotal to the issue of "bumping" rights. The Appellant contends that she was an employee of the central office, rather than the Stores Division, at the time of her layoff. Although various time sheets do indicate that she worked for the Stores Division, she contends that she was merely a "floater" and was "on loan" to the Stores Division while it was in existence. The Appellant directs attention to organizational charts of the ABCA indicating

---

2. The ABCA explained that the Appellant was not included within the July 1990 layoff plan since her continued services were needed to facilitate closure of all the State's liquor stores.

3. The Appellant contends that she had seniority to qualify for twenty-nine positions at the ABCA at the time of her layoff.

4. Neither the Appellant nor her attorneys received a copy of Judge Ranson's order. Judge Ranson had directed that a certified copy of the final order be sent to all parties or counsel of record, and a notation in the circuit clerk's file

indicated that the order was sent to two individuals representing the ABCA on June 3, 1993, and June 7, 1993. In early 1998, still assuming that a decision had not yet been rendered, the Appellant's attorney contacted a law clerk for Judge James Stucky at the Kanawha County Circuit Court concerning the status of the appeal. Unaware of Judge Ranson's prior order reversing the Board, Judge Stucky entered a final order dated May 11, 1998, affirming the decision of the Board in favor of the Appellant. Upon learning of the prior order, Judge Stucky vacated his order on May 14, 1998.

that no clerical or secretarial position was in existence in the Stores Division. Any work the Appellant did for the Stores Division, she contends, was simply incidental to her employment within the central office. The Appellant also indicates that she answered directly to the central office, even while she was assigned to work within the Stores Division.

The ABCA maintains that the lower court properly reversed the Board's decision since the Appellant was employed in the Stores Division, the specific organizational unit designated for the reduction-in-force. The ABCA contends that the Appellant was assigned to the Stores Division from June 1, 1986, to her April 1991 layoff. Her immediate supervisor was the Director of the Stores Division, and her personnel card and evaluations all indicated that she was a member of the Stores Division.

The determination of the Appellant's status within the organizational structure is a purely factual issue, resolved by the Board and the lower court in similar fashion, finding that the Appellant was employed within the Stores Division. We discern no clear error in that factual finding, and we therefore affirm in that regard.

■ Having accepted the finding that the Appellant was employed within the Stores Division, we address the contention that the Appellant should have been permitted to "bump" into a less senior employee's position for which she was qualified at the time of her layoff. West Virginia Code § 29–6–10(5) (1999) provides the statutory basis for "bumping," as follows:

(5) For layoffs by classification for reason of lack of funds or work, or abolition of a position, or material changes in duties or organization, or any loss of position because of the provisions of this subdivision and for recall of employees so laid off, consideration shall be given to an employee's seniority as measured by permanent employment in the classified service or a state agency. In the event that the agency wishes to lay off a more senior employee, the agency must demonstrate that the senior employee cannot perform any other job duties held by less senior employees within

that agency in the job class or any other equivalent or lower job class for which the senior employee is qualified: Provided, That if an employee refuses to accept a position in a lower job class, such employee shall retain all rights of recall as hereinafter provided.

However, Section 29–6–10(5), as emphasized by the ABCA, authorizes bumping only within the specific organizational unit of which the employee is a part. Agency-wide bumping is not authorized. West Virginia Code 5F–2–2(d) (1993) explains,

The layoff and recall rights of employees within the classified service of the state as provided in subsections five and six, section ten, article six, chapter twenty-nine of this code shall be limited to the organizational unit within the agency or board and within the occupational group established by the classification and compensation plan for the classified service of the agency or board in which the employee was employed prior to the agency or board's transfer or incorporation into the department: Provided, That the employee shall possess the qualifications established for the job class. The duration of recall rights provided in this subsection shall be limited to two years or the length of tenure, whichever is less. Except as provided in this subsection, nothing contained in this section shall be construed to abridge the rights of employees within the classified service of the state as provided in sections ten and ten-a, article six, chapter twenty-nine of this code or the right of classified employees of the board of regents to the procedures and protections set forth in article twenty-six-b, chapter eighteen of this code.

The ABCA asserts that the governing statute is actually West Virginia Code § 60–3A–30 (1997), furnishing guidance directly to the ABCA and providing in pertinent part as follows:

· The alcohol beverage control commission director and directors of all other state agencies shall use best efforts to employ qualified employees who were employed at the facility immediately prior to such sale or transfer: Provided, That notwithstand-

402

ing any other provision of the code to the contrary, in filling vacancies at other facilities or other state agencies the director and the directors of other agencies shall, for a period of twenty-four months after such transfer or sale give preference over all but existing employees to qualified employees who were permanently employed at the facility immediately prior to such transfer or sale: Provided, however, That qualified persons who were permanently employed at an alcohol beverage control commission facility immediately prior to such transfer or sale shall not supersede those employees with recall rights in other state agencies.

Based upon the foregoing statutes, we conclude that the Appellant did not have a right to "bump" other employees within the ABCA. Her bumping privileges would have been confined to her own organizational unit, the Stores Division, which was being dismantled and would therefore not have provided any alternative employment opportunities.

## IV. Substantial Compliance

█ The Appellant asserts that the ABCA violated reduction-in-force procedures outlined in Section 13.04. While the ABCA acknowledges that the Appellant's receipt of her termination letter prior to the submission of her name to the Director of the Division of Personnel was an error, it contends that it was merely a technical error, with no resulting harm. The ABCA argues that this case is similar to *Vosberg v. Civil Service Commission*, 166 W.Va. 488, 275 S.E.2d 640 (1981) and *Mathison*, in which this Court explained that where there is substantial compliance on the part of the employer in regard to a procedure, a mere technical error will not invalidate the entire procedure.

█ Indeed, *Vosberg* and *Mathison* illustrate principles of substantial compliance and indicate that where a mere technical error occurs, the termination will not automatically be set aside. However, in the case sub judice, the error was more significant than the technical errors discussed in *Vosberg* and *Mathison*. In *Vosberg*, for instance, we were

presented with a factual scenario in which an employee had continuously failed to report for work or call to inform his employers that he was not be in attendance. The employee's immediate supervisor committed a technical violation of grievance procedure by failing to forward a copy of her response to the employee's grievance to the Director of Personnel. 166 W.Va. at 491, 275 S.E.2d at 642. We found that such error was insufficient to impart relief to the employee and explained as follows at syllabus point one,

Where a state employee, covered by civil service W.Va.Code, ch. 29, art. 6, has instituted a grievance pursuant to a state personnel grievance procedure and the employee's supervisor violates the grievance procedure, such violation will not result in the reversal of an order by the West Virginia Civil Service Commission affirming the employee's dismissal from employment, where such violation of the grievance procedure is merely technical, following substantial compliance with the procedure, and there has existed between the employee and his supervisors ongoing communications concerning the employee's employment problems.

In *Mathison*, an employee's position was abolished in accordance with a reorganization of state government. The employee asserted that the reduction in force procedures had been violated. Chronologically, the employee had been listed by division, rather than by name, in a reduction in force listing;[5] he then received his letter of termination; and finally his employer provided a reduction in force plan which listed him specifically by name. The inconsistency was the fact that the employee had not been listed by name prior to termination. This Court, however, found that the memorandum listing the employee's division was sufficient to place him on notice of the reduction in force and was sufficient to comply with the reduction in force regulations. 171 W.Va. at 698, 301 S.E.2d at 787. We therefore denied the requested relief.

5. The employee's division, No. 8496–07, was listed on the memorandum, and the employee was

the only Executive Assistant in that division. 171 W.Va. at 696, 301 S.E.2d at 785.

In the present case, however, the Appellant was not listed on any reduction in force plan, by name, position, or tenure. While the Appellant was aware that the Stores Division was subject to the reduction in force, she had no notice that her own position was being terminated. The failure of the ABCA to list the Appellant was not the type of negligible error encountered in *Vosberg* and *Mathison.* In *Mathison,* we explained that we "will not sanction impermissible separations of employment of civil service employees." 171 W.Va. at 700, 301 S.E.2d at 789. "Such separations will be thoroughly reviewed to assure compliance by the appointing authority with legislative enactments and rules and regulations relating to such separations." *Id.*

We consequently reverse the circuit court's determination and order reinstatement of the Appellant, in accordance with the order of the Board. With regard to the issue of back pay, we remand to the lower court for the determination of the appropriate back pay award, considering the delay due the confusion of orders in circuit court.[6]

Reversed and remanded with directions.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

WORKMAN, Justice, dissenting:

The majority pronounces the established principles of substantial compliance, analyzes the precedents for such doctrine, and then attempts to distinguish this case from the precedents. The Appellant was clearly a member of a section which was being obliterated.[1] Yet, the majority is now reinstating her based upon the type of mere technicality we have previously excused under the substantial compliance rule.

In *Vosberg v. Civil Service Commission of West Virginia,* 166 W.Va. 488, 275 S.E.2d 640 (1981), as discussed by the majority, we found "that the failure by Ms. Moore to forward a copy of her response to Ms. Carte,

while clearly improper, was not a violation of the grievance procedure sufficient to grant relief to the appellant in this proceeding." *Id.* at 491, 275 S.E.2d at 643. Similarly, in *West Virginia Department of Health v. Mathison,* 171 W.Va. 693, 301 S.E.2d 783 (1983), we found substantial compliance with reduction in force regulations, despite the absence of a listing of the employee's name in the notice of reduction in force. *Id.* at 697, 301 S.E.2d at 787. The essence of the substantial compliance principle is that not all technical procedural violations merit relief where there is substantial compliance with *substantive* law.

In the present case, the layoff list upon which the Appellant's name appeared was submitted on April 17, 1991, almost one month after the ABCA Commissioner sent the Appellant a certified letter notifying her that her position was being eliminated. She was thereafter terminated, effective April 30, 1991. Testimony of Deputy Commissioner Louis Smith indicated that there had been ongoing conversations with the Appellant regarding the fact that she would be included in the reduction in force of the Stores Division. This fact, coupled with the listing of the Appellant's division on the reduction in force memorandum, was sufficient to notify the Appellant of the action to be taken and to substantially comply with the reduction in force regulations.

In considering the circuit court's order, which I would affirm, this Court employs the two-prong deferential standard of review, as set forth in syllabus point one of *State v. Michael M.,* 202 W.Va. 350, 504 S.E.2d 177 (1998), as follows:

"When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. Pt. 1, *McCormick v. Allstate*

---

6. The ABCA objects to the inclusion of the period of delay in discovery of Judge Ranson's order in any potential calculation of back pay and benefits.

1. The Board and the lower court agreed that the Appellant was employed within the Stores Division. The majority properly affirmed that decision.

*Insurance Company,* 197 W.Va. 415, 475 S.E.2d 507 (1996).

The majority is demonstrating flagrant inconsistency with precedent and has exceeded the proper scope of review, under the guise of simply distinguishing this case factually from prior decisions. In the words of Ralph Waldo Emerson, "[a] foolish consistency is the hobgoblin of little minds." Yet, in the development of the law, consistency is the backbone of the coherent development of judicial precedent. Consistency in jurisprudential evaluations assures impartiality and provides the equilibrium essential to the congruous development of any area of the law. *Mathison* provided us with a roadmap, and the majority, in what appears to be a result-oriented course of action, chose to take a different route. Consequently, the law has been applied in an inconsistent and unequal manner. I therefore respectfully dissent.