619 S.E.2d 133

**Vickie L. VANCE, Petitioner Below, Appellant,**

v.

**WEST VIRGINIA BUREAU OF EMPLOYMENT PROGRAMS/ELKINS JOB SERVICE, Respondent Below, Appellee.**

**No. 32162.**

Supreme Court of Appeals of West Virginia.

Submitted May 10, 2005.

Decided June 17, 2005.

Frank P. Bush, Jr., Elkins, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Kelli D. Talbott, Deputy Attorney General, Charleston, for Appellee.

PER CURIAM.

This is an appeal by Vickie L. Vance, appellant/petitioner below (hereinafter Ms. Vance), from an order of the Circuit Court of Kanawha County that affirmed an administrative decision of the West Virginia Education and State Employees Grievance Board (hereinafter Grievance Board). The circuit court's order found that the Grievance Board was correct in finding that Ms. Vance's employer, the West Virginia Bureau of Employment Programs, Elkins Job Service, appellee/respondent below (hereinafter Bureau), did not violate any regulations or rules when it transferred her to a new job position. Here, Ms. Vance contends that her involuntary transfer was done in violation of rules promulgated by the Bureau. After a careful review of the briefs and the record on appeal, and with consideration of the arguments of the parties, we affirm the circuit court's order.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Ms. Vance has been employed by the Bureau for over twenty-five years. From 1989 to 2001, Ms. Vance held the position of Office Manager for the Bureau's Elkins Job Service

program. As an Office Manager, Ms. Vance supervised a staff of eleven people. At some point in 2000, six of Ms. Vance's staff members filed grievances against her and sought to have her removed as Office Manager. It appears that the grievances were ultimately determined to be meritless. However, as a result of those grievances and other staff problems,[1] the Bureau approached Ms. Vance in April of 2001, and inquired as to her interest in taking a position as Systems Coordinator for the Elkins office. Ms. Vance declined the offer.[2] On June 5, 2001, the Bureau advised Ms. Vance that she was being involuntarily transferred to the position of Systems Coordinator. The sole reason for the transfer given in the letter was that, it "is necessary in order to maintain the high quality of service to our customers."[3]

On June 18, 2001, Ms. Vance filed an administrative grievance objecting to the transfer of her job position. One of the arguments Ms. Vance advanced for her objection to the transfer was that it was not done in accordance with the Bureau's Administrative Directives 6000.11, 6000.40 and 6500.40 (discussed in Part III of this opinion). At each level of the grievance proceedings, Ms. Vance's objection to the transfer was denied. On May 28, 2002, Ms. Vance filed with the circuit court an appeal from the final decision of the Grievance Board. By order entered March 30, 2004, the circuit court affirmed the decision of the Grievance Board. From this ruling, Ms. Vance now appeals to this Court.

## II.

### STANDARD OF REVIEW

■■■ In reviewing a decision of the Grievance Board, both this Court and the circuit court employ the same standard of

1. During the period that the grievances were filed, "there was a high rate of the usage of sick leave by the Elkins Job Service staff."

2. A subsequent effort was made by the Bureau to have Ms. Vance voluntarily accept the new position. She again declined.

3. As a result of the transfer, Ms. Vance suffered no loss in pay or job benefits.

4. Ms. Vance also argued that Administrative Directives 6000.11 and 6500.40 were not followed.

review. We have held that "[a] final order of the hearing examiner for the [West Virginia Education and State Employees Grievance Board], made pursuant to W. Va.Code, 18–29–1, *et seq.* (1999), and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph County Bd. of Educ. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989). Accord Syl. pt. 1, *Keatley v. Mercer County Bd. of Educ.,* 200 W.Va. 487, 490 S.E.2d 306 (1997). This Court elaborated more fully on the standard of review of Grievance Board determinations in Syllabus point 1 of *Cahill v. Mercer County Board of Education,* 208 W.Va. 177, 539 S.E.2d 437 (2000), as follows:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

With this standard in place, we now analyze the issues raised by Ms. Vance.

## III.

### DISCUSSION

Ms. Vance contends that her transfer was invalid because the Bureau failed to comply with the requirements of Administrative Directive 6000.40.[4] The relevant part of the Directive states as follows:

Those Administrative Directives concern posting notice of vacant positions. The Bureau admits that Ms. Vance's transfer was not posted in compliance with Administrative Directives 6000.11 and 6500.40. However, the Bureau contends, and we agree, that enforcement of the posting requirements is a matter that is relevant for someone who did not get the position because of the failure to post the vacancy. "In this situation '[i]t is a well-established rule that a litigant may assert only his own legal rights and interests and cannot rest a claim to relief on the legal rights or interests of third parties.'" *State ex rel. Abra-*

In the event an involuntary transfer becomes necessary, the affected employee will be consulted prior to the fact, given written reasons why the need exists, and given at least a two week (14 calendar day) notice of the impending transfer, when possible.

Administrative Directive 6000.40.[5] This Court has long held that "[a]n administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syl. pt. 1, *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977). *Accord* Syl. pt. 2, *In re Tax Assessment Against Am. Bituminous Power Partners, L.P.*, 208 W.Va. 250, 539 S.E.2d 757 (2000); *Black v. State Consol. Pub. Ret. Bd.*, 202 W.Va. 511, 519, 505 S.E.2d 430, 438 (1998). From our review, we find complete compliance with only one of the three prerequisites for an involuntary transfer.

The record is clear. Ms. Vance was not consulted about the involuntary transfer prior to the transfer occurring. Additionally, she was not given at least a two week notice of the impending involuntary transfer. Although Ms. Vance contends that she was not given a written reason for the involuntary transfer, the record indicates differently. The letter notifying Ms. Vance of the transfer stated that the transfer "is necessary in order to maintain the high quality of service to our customers." While Ms. Vance may not like the reason given, the letter nevertheless provided justification for the involuntary transfer. The Bureau offers two arguments as to why its failure to fully comply with the remaining requirements of Administrative Directive 6000.40 should not afford relief to Ms. Vance.

**1. Section 11.6(a) of the Administrative Rules.** The Bureau cites to language in Section 11.6(a) of the Administrative Rules of the West Virginia Division of Personnel as grounds for upholding the manner in which Ms. Vance was transferred. The relevant language of this section states:

Except as otherwise provided in subsection 10.4 of this rule, appointing authorities may transfer a permanent employee from a position in one organizational subdivision of an agency to a position in another organizational subdivision of the same or another agency at any time.

143 C.S.R. 1, § 11.6(a). The Bureau contends that "this rule provides State agencies, such as the Bureau, with considerable discretion regarding the transfer of employees." We do not disagree with the contention that Section 11.6(a) provides discretion to state agencies in making transfer decisions. However, the broad discretion afforded by Section 11.6(a) has been tempered by the Bureau's self-imposed Administrative Directive 6000.40.

It is generally accepted that "[s]tatutes and administrative regulations are governed by the same rules of construction." *Farm Sanctuary, Inc. v. Department of Food and Agric.*, 63 Cal.App.4th 495, 505, 74 Cal.Rptr.2d 75 (1998). *See also State ex rel. Wyant v. Brotherton*, 214 W.Va. 434, 440 n. 13, 589 S.E.2d 812, 818 n. 13 (2003) ("[I]t has been recognized that '[w]hen considering rules promulgated by courts, courts apply the principles of statutory construction.'" (quoting 20 Am.Jur.2d Courts § 51, at 370 (1995))). We have held that "[t]ypically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails." *Bowers v. Wurzburg*, 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999). *See also* Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled."). Both Section 11.6(a) and Administrative Directive 6000.40 address the issue of transfers. However, Administrative Directive 6000.40 is the more specific rule. Consequently, the Bureau cannot rely on Section 11.6(a) as the basis for transferring Ms. Vance to the position of Systems Coordinator without her consent.

---

*ham Linc. Corp. v. Bedell*, 216 W.Va. 99, 112, 602 S.E.2d 542, 555 (2004) (Davis, J., concurring) (quoting *Coalition of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002)).

**5.** The complete text of Administrative Directive 6000.40 is attached to this opinion as Appendix A.

■ **2. Substantial compliance with Administrative Directive 6000.40.** The Bureau next contends that the manner in which Ms. Vance was transferred should be upheld because it substantially complied with Administrative Directive 6000.40. This Court has held that "where there is substantial compliance on the part of the employer in regard to a procedure, a mere technical error will not invalidate the entire procedure." *West Virginia Alcohol Beverage Control Admin. v. Scott,* 205 W.Va. 398, 402, 518 S.E.2d 639, 643 (1999) (per curiam). *See also State ex rel. Catron v. Raleigh County Bd. of Educ.,* 201 W.Va. 302, 496 S.E.2d 444 (1997) (per curiam) (finding substantial compliance in filing grievance); *Mahmoodian v. United Hosp. Ctr., Inc.,* 185 W.Va. 59, 404 S.E.2d 750 (1991) (finding substantial compliance with rules for revoking physician's medical staff appointment privileges); *Hare v. Randolph County Bd. of Educ.,* 183 W.Va. 436, 396 S.E.2d 203 (1990) (per curiam) (finding substantial compliance with termination procedure); *Duruttya v. Board of Educ. of County of Mingo,* 181 W.Va. 203, 382 S.E.2d 40 (1989) (finding substantial compliance in seeking grievance hearing); *Vosberg v. Civil Serv. Comm'n of West Virginia,* 166 W.Va. 488, 275 S.E.2d 640 (1981) (holding that violation of grievance procedure by employer was merely technical and that there was substantial compliance with the procedure).

In support of its substantial compliance argument, the Bureau notes that it spoke with Ms. Vance on two separate occasions regarding her transfer to the position of Systems Coordinator, and it provided her with a written reason for the involuntary transfer. Under the unique facts of this case, we agree with the Bureau that there was substantial compliance with Administrative Directive 6000.40.

The Bureau correctly asserts that Ms. Vance is a highly valued employee with an outstanding employment record. However, it became abundantly clear during the administrative proceedings that an extremely serious morale problem had developed under Ms. Vance's leadership as Office Manager. So, in order to maintain an efficient staff at the Elkins Job Service program, the Bureau had to remove Ms. Vance from the position of Office Manager. As a result of her outstanding service, the Bureau went out of its way to shield Ms. Vance's impeccable record by attempting to get her to voluntarily take the position of Systems Coordinator. When Ms. Vance refused to voluntarily take the position, the Bureau was left with no choice but to impose the transfer. In doing so, the Bureau protected Ms. Vance's employment record by not stating that the transfer was due to the morale problem that had developed under her leadership. Under these circumstances, we believe that the two consultations with Ms. Vance concerning a transfer and the reason given for the transfer amounted to substantial compliance with Administrative Directive 6000.40., even though the Bureau did not provide two weeks advance written notice of the involuntary transfer.[6]

**IV.**

**CONCLUSION**

The circuit court's order affirming the Grievance Board decision is affirmed.

Affirmed.

**APPENDIX A**

**ADMINISTRATIVE DIRECTIVE 6000.40**

**SUBJECT: Transfers**

Much of this policy is covered in West Virginia Administrative Rule, Section 11.

**Policy Statement**

It is recognized that any movement of personnel may have a traumatic effect on the employee's attitude, work, and general well-being. This is especially true if the move is involuntary and/or from one geographic area to another. It shall, therefore, be the policy of this Bureau that routine employee transfers will be on a voluntary basis.

In the event an involuntary transfer becomes necessary, the affected employee will be consulted prior to the fact, given written reasons why the need exists, and given at least a two week (14 calendar day) notice of the impending transfer, when possible. In the event a

---

**6.** We hasten to point out that the unique facts of this case warranted a finding of substantial compliance with Administrative Directive 6000.40. Our ruling should not be taken by the Bureau to mean that it does not have to fully comply with Administrative Directive 6000.40. in the future.

change of residency is necessitate by the transfer, the employee will be given a 30–calendar–day notice, except in extenuating circumstances. In these situations, as well as transfers between divisions, approval of the Commissioner is required. The same stipulations apply to permanent and temporary moves of more than two weeks (14 calendar days). If the transfer is a temporary one, a time frame will be provided in writing. If the transfer is involuntary, the supervisor must provide documentation to all affected parties justifying the necessity of the transfer.

Transfers to comparable classes require prior approval of the Division of Personnel to ensure the employee meets the minimum qualifications of the new class.

**Responsibilities and Procedures**

It is the responsibility of the unit supervisor to initiate through channels a request to fill an authorized vacancy, justifying any request for any involuntary movement or a specific individuals transfer.

The cost center manager and the division director will review all requests for employee transfers and make recommendations for the Commissioner's approval if a transfer is across division lines, is involuntary, or a promotion or demotion is involved.

BEP Human Resources will determine if the Bureau staffing pattern is being followed and if a vacancy exists before final approval of the transfer is made.

The Commissioner has final responsibility for the approval of movement of personnel across division lines, the involuntary movement of personnel, and transfers where a promotion or demotion is involved.

If the transfer is involuntary, the supervisor must provide documentation to all affected parties justifying the necessity of the transfer.

When a posted vacancy is filled by in-house transfer, the requesting supervisor will send a memorandum to BEP Human Resources advising of that action. The requesting supervisor will contact the employees current supervisor and arrange a mutually agreeable transfer date. The employee may need to finish current projects before transferring. The requesting supervisor will send written notification of the mutually agreeable trans-

fer date to BEP Human Resources, along with written approval of the affected division director(s).

BEP Human Resources will prepare the necessary WV–11 for the Commissioner's or his designee's signature. Once signed, BEP Human Resources will forward the WV–11 to the Division of Personnel and the Department of Administration for required approvals. When all approvals are obtained, BEP Human Resources will transmit a copy of the approved WV–11 to affected division directors.

BEP Human Resources will notify appropriate parties of approval. Upon receiving official notification, the supervisor will notify the employee of the transfer date.

Any required tests will be scheduled by the Division of Personnel prior to the transfer.

If the transfer is disapproved at any point, all affected parties will be notified through appropriate channels.

Effective: June 1, 1980.

Last revision: September 25, 2002.