IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2016 Term

_____

No. 15-0711

_____

**FILED**

**November 15, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF MOTOR VEHICLES,
Defendant Below, Petitioner

v.

DAVID KING, ADMINISTRATOR OF THE ESTATE OF WILMA
ANN KING, DECEASED,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Cabell County
The Honorable Christopher D. Chiles, Judge
Civil Action No. 13-C-199

REVERSED AND REMANDED

_____

Submitted: September 20, 2016
Filed:  November 15, 2016

Patrick Morrisey, Esq.
Attorney General
Julie Marie Blake, Esq.
Assistant Attorney General
Mary M. Downey, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Petitioner

Gail Henderson-Staples, Esq.
Dwight J. Staples, Esq.
Henderson, Henderson & Staples, L.C.
Huntington, West Virginia
Attorneys for Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "A circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009).

2.      "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. pt. 1, *Findley v. State Farm Mut. Auto. Ins., Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002).

3.      "To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions. To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune pursuant to Syl. Pt. 7 of *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996)." Syl. pt. 10, *Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

4. "To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability." Syl. pt. 11, *Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014).

5. "In the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syl. pt. 1, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962).

Benjamin, Justice:

Petitioner and defendant below, the West Virginia Department of Transportation, Division of Motor Vehicles ("DMV"), appeals the June 26, 2015, order of the Circuit Court of Cabell County that denied the DMV's motion for summary judgment after determining that the DMV failed to perform a nondiscretionary duty and therefore did not have qualified immunity in an action brought against it by Respondent David King, as administrator of the estate of Wilma Ann King, deceased. After considering the parties' arguments, the applicable law, and the appendix in this case, this Court finds that the circuit court erred in denying DMV's motion for summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an auto accident that occurred in January 2013, which resulted in the death of Respondent David King's mother, Wilma Ann King. Ms. King was a passenger in an automobile that was struck by an automobile driven by Doris Fay Peyton.[1] Ms. Peyton's driver's license had been suspended in 2007, and reinstated in 2009.[2]

---

[1] In his amended complaint, the respondent does not directly allege that the automobile accident was the result of Ms. Peyton's seizure disorder.

[2] According to the respondent, in 2005 Ms. Peyton did not have a valid driver's license but sought to have her driving privileges restored. However, after Ms. Peyton failed to submit a medical report from her doctor as directed by the DMV, on March 19, 2007, the DMV suspended Ms. Peyton's driving privileges for medical reasons for a two year period.

3

The respondent filed a negligence action naming Ms. Peyton as a defendant and later amended his complaint to add the DMV as a defendant. The respondent alleged that in October 2010, the DMV was negligent in medically approving Ms. Peyton's driver's license application without first submitting Ms. Peyton's medical information to the Driver's Licensing Advisory Board ("advisory board"),[3] given Ms. Peyton's medical history, pursuant to the applicable statutes and administrative rules.

In reply to the respondent's negligence action, the DMV filed a motion for summary judgment in which it argued that it was entitled to qualified immunity on the basis that referral to the advisory board is discretionary. The circuit court denied the DMV's motion, concluding that referral is nondiscretionary under West Virginia Code of State Rules § 91-5-3 (2006), and thus there is no qualified immunity.[4]

---

[3]The Driver's Licensing Advisory Board is governed by W. Va. Code § 17B-2-7a (2003). According to this statute, the board consists of five members who are appointed by the Governor for specified terms. One member of the board is an optometrist and the other four are physicians or surgeons. Regarding the role of the board, the statute provides:

> The board shall advise the Commissioner of Motor Vehicles as to vision standards and all other medical criteria of whatever kind or nature relevant to the licensing of persons to operate motor vehicles under the provisions of this chapter. The board shall, upon request, advise the Commissioner of Motor Vehicles as to the mental or physical fitness of an applicant for, or the holder of, a license to operate a motor vehicle. The board shall furnish the commissioner with all such medical standards, statistics, data, professional information and advice as he may reasonably request.

[4] The circuit court found, in relevant part:

4

The DMV now appeals the circuit court's denial of its motion for summary judgment on the basis of qualified immunity.

## II. STANDARD OF REVIEW

In this case, we are asked to review a circuit court's denial of a motion for summary judgment. This Court has held that "[a] circuit court's denial of summary judgment that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the 'collateral order' doctrine." Syl. pt. 2, *Robinson v. Pack*, 223 W. Va. 828, 679 S.E.2d 660 (2009). Therefore, this case is properly before us. In addition, "[t]his Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W. Va. 80, 576 S.E.2d 807 (2002). Accordingly, we will now review the ruling below *de novo*.

---

In this case the [DMV's] regulation in effect at the time Ms. Peyton's license was reinstated in February 2009, W. Va. Code R. § 91-5-3 (2006), **required** the [DMV] to refer her medical file to the Medical Advisory Board for its review and recommendation before her license could be reinstated. This was not done.

The Court therefore **FINDS** that the act of referring a licensee's medical records to the Division's Advisory Board was a nondiscretionary duty and therefore **FINDS** that the [DMV] is not entitled to qualified immunity in this case.

5

### III. ANALYSIS

This case involves our law of qualified immunity. This Court recently explained:

> To determine whether the State, its agencies, officials, and/or employees are entitled to immunity, a reviewing court must first identify the nature of the governmental acts or omissions which give rise to the suit for purposes of determining whether such acts or omissions constitute legislative, judicial, executive or administrative policy-making acts or involve otherwise discretionary governmental functions. To the extent that the cause of action arises from judicial, legislative, executive or administrative policy-making acts or omissions, both the State and the official involved are absolutely immune pursuant to Syl. Pt. 7 of *Parkulo v. W. Va. Bd. of Probation and Parole*, 199 W. Va. 161, 483 S.E.2d 507 (1996).

Syl. pt. 10, *Reg'l Jail and Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751 (2014). We have further indicated that

> To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

Syl. pt. 11, *id.*

6

In the instant case, the act or omission giving rise to the respondent's action against the DMV is the DMV's failure to submit Ms. Peyton's medical information to the advisory board prior to making a determination regarding Ms. Peyton's driving privileges. In order to determine whether the DMV, a State agency,[5] is entitled to qualified immunity from the respondent's action against it, this Court must determine whether the DMV's submission to the advisory board of Ms. Peyton's medical information constitutes a discretionary or nondiscretionary function. Quite simply, if the DMV had a nondiscretionary duty to refer Ms. Peyton's medical file to the advisory board prior to reinstating Ms. Peyton's driver's license, the DMV is not entitled to qualified immunity under the facts of this case. The circuit court below found that "the act of referring a licensee's medical records to the [DMV's] Advisory Board was a nondiscretionary duty and therefore . . . the [DMV] is not entitled to qualified immunity in this case."

The circuit court hinged its decision that the DMV had a nondiscretionary duty to refer Ms. Peyton's medical information to the advisory board for review and recommendation prior to reinstating Ms. Peyton's driving privileges on the 2006 version of West Virginia Code of State Rules § 91-5-3 (2006) regarding "Denial of Driving Privileges for Medical Reasons."[6] This rule provided:

---

[5] *See* W. Va. Code § 17A-2-1 (1951) which states that "[t]he department of the government of this State, known as the Department of Motor Vehicles, heretofore created, shall be continued."

7

3.1 Statutory Provisions – W. Va. Code § 17B-2-3 provides that the Division of Motor Vehicles shall not issue a driver's license to any person when the Commissioner of Motor Vehicles has good cause to believe that the operation of a motor vehicle on the highways of this State by [a] person would be inimical to public safety or welfare. W. Va. Code § 17B-3-6 authorizes the Division to suspend the driver's license of any person without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee is incompetent to drive a motor vehicle. In view of these statutory provisions, the Division shall not issue or renew a driver's license for any person when the Commissioner determines that the person is incompetent to drive a motor vehicle, or when the Commissioner has good cause to believe that the operation of a motor vehicle on the highways of this State by the person would be inimical to public safety or welfare, unless the application for the license is accompanied by a letter of explanation in such detail as the Commissioner may require concerning the mental or physical condition of the applicant at the time of application.

3.2 Procedures for Original, Renewal, or Duplicate Applications for License – The Commissioner, after reviewing the letter of explanation provided for in subsection 3.1 of this rule, may:

3.2.a. Approve the application for license;
3.2.b. Approve the application for license, and impose appropriate restrictions as the applicant's physical or mental condition may require; or
3.2.c. Require the applicant to submit the following:

    1. A Medical Report Form completed by a physician of the applicant's choice who is licensed in the United States;
    2. A Medical Report Form completed by a Board Certified Physician in the appropriate medical specialty for the condition under consideration; or
    3. A Vision Examination Report Form completed by an optometrist or ophthalmologist of the applicant's choice who is licensed in the United States and

_____

[6] This administrative rule has since been amended. However, the May 15, 2006, version was the one in effect during the events at issue in this case and therefore controls.

4.  Any other record or other information concerning the applicant or licensee's competency to operate a motor vehicle that he or she would like the Commissioner to consider.

3.2.d.  The Commissioner, based on standards recommended by the Driver's License Advisory Board, or upon individual review in instances where no standard applies, may take the action indicated in subdivisions 3.2.a or 3.2.b of this rule, refuse the application or order the suspension of license.

3.2.e.  If an application for driver's license, or application for renewal of driver's license is refused by the Commissioner because of a physical or mental condition, the Commissioner shall notify the applicant within seventy (70) calendar days from the date of application or renewal by certified or registered mail, return receipt requested. The applicant is entitled to a hearing on the refusal by the Commissioner to issue or renew a driver's license.

3.3.  Procedures for Medical or Vision Review – As provided by W. Va. Code § 17B-3-6, the Division may suspend the driver's license of a licensee without a preliminary hearing upon a showing by its records or other sufficient evidence that the licensee is incompetent or otherwise not qualified to operate a motor vehicle.

3.3.a.  The Division may upon written notice of five days require the licensee to present on the form prescribed by the Commissioner to the Driver's License Advisory Board a:

1.  Medical Report Form completed by a physician of the licensee's choice who is licensed in the United States;
2.  Medical Report Form completed by a board certified physician in the appropriate medical specialty for the condition under consideration; or
3.  Vision Examination Report Form completed by an optometrist or ophthalmologist of the licensee's choice who is licensed in the United States.

3.3.b.  The licensee may, in addition to the medical and or vision report forms, submit any other record or documentation concerning his or her competency to drive for

consideration of the Driver License Advisory Board and the Commissioner.

3.3.c.  The Commissioner, after reviewing the Medical Report or Vision Examination Report and the recommendation of the Driver's License Advisory Board, may:

　　　1.  Determine that the licensee is competent to drive a motor vehicle;
　　　2.  Determine that the licensee is competent to drive a motor vehicle if certain appropriate restrictions are imposed and impose such restrictions as the licensee's physical or mental condition may require; or
　　　3.  Determine that the licensee is incompetent to drive a motor vehicle, that no appropriate restrictions can be imposed under which the licensee could competently operate a motor vehicle, and order the suspension of the license until such time as the licensee is permitted to submit further information to determine whether or not he or she is competent to drive a motor vehicle.

3.3.d.  The Commissioner shall immediately make and enter an order suspending the license upon making a determination that the licensee is incompetent to drive a motor vehicle. Should the Commissioner further determine that the continued operation of a motor vehicle by the licensee presents a clear and immediate danger to the licensee and others, the suspension shall remain in effect until the outcome of any hearing requested or until the end of the period of the suspension. The Division  shall mail the licensee a copy of the order by registered or certified mail, return receipt requested.

The DMV argues on appeal that the circuit court erred by failing to rely on subdivision 3.3.a. of the above rule which authorizes but does not mandate that the DMV require the licensee to present the appropriate medical forms to the advisory board. The DMV further contends that the circuit court erred when it failed to apply the maxim

*expressio unius est exclusio alterius* in construing the above rule.[7] The DMV submits that several parts of the rule, such as subdivisions 3.2.a., b., c., and d., list discretionary actions that may be taken by the DMV after individual review by the DMV of a licensee's information, including medical information, without referencing any purported mandatory duty by the DMV to have submitted the medical information to the advisory board.

The respondent counters that subdivision 3.3.c. of the above rule mandated that "[t]he Commissioner, after reviewing the Medical Report or Vision Examination Report and the recommendation of the" advisory board may determine whether a licensee is competent to drive. The respondent avers that the requirement that the DMV review the advisory board's recommendation before making a determination in a case logically requires the DMV's submission of the medical information to the advisory board. Otherwise, says the respondent, although the DMV is required to receive the advisory board's recommendation before reaching a final determination in a case, there would be no recommendation from the advisory board to review. Therefore, the respondent concludes that on the day of the reinstatement of Ms. Peyton's driver's license, the DMV was required to have received a medical report concerning Ms. Peyton, submitted that report to the advisory board for review, and received a recommendation from the advisory board on the board's findings.

_____

[7] The Latin phrase *expressio unius est exclusio alterius* is "[a] canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary, 701 (10th ed. 2014).

11

After careful consideration of the administrative rule at issue, this Court concludes that the circuit court erred in determining that the rule required the DMV to submit Ms. Peyton's medical information to the advisory board for the board's recommendation. In our examination of West Virginia Code of State Rules 91-5-3, we are mindful that "[i]t is generally accepted that '[s]tatutes and administrative regulations are governed by the same rules of construction.'" *Vance v. Bureau of Emp't Programs*, 217 W. Va. 620, 623, 619 S.E.2d 133, 136 (2005), *quoting Farm Sanctuary, Inc. v. Dep't of Food and Agric.*, 63 Cal.App.4th 495, 505, 74 Cal.Rptr.2d 75 (1998). The rule of statutory construction applicable in the instant case informs us that "[i]n the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syl. pt. 1, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962). In the instant case, the circuit court erred in construing West Virginia Code of State Rules § 91-5-3 by singling out the language of one section of the rule instead of considering the rule in its entirety.

Section 91-5-3 deals generally with the denial of driving privileges for medical reasons. Subdivision 2 of the rule applies when the DMV is asked to issue or renew a driver's license for a person whom the DMV determines to be incompetent to drive a motor vehicle or when the DMV has good cause to believe that the person's operation of a motor vehicle would be inimical to public safety or welfare. In such a

12

circumstance, the applicant may submit with his or her driver's license application, a letter of explanation addressing his or her mental or physical condition. After reviewing the letter of explanation, the Commissioner of the DMV may approve the application, approve the application with restrictions, or require the applicant to submit to the Commissioner a medical report form or a vision examination report form, and any other information concerning the applicant's or licensee's competency to operate a motor vehicle. At that point, the Commissioner may approve the application, approve the application with restrictions, or refuse the application or order the suspension of the license.

Subdivision 3 of Section 91-5-3 sets forth procedures for medical or vision review where a licensee's driving privileges are suspended without a preliminary hearing upon a proper showing that the licensee is incompetent or otherwise not qualified to drive a motor vehicle. Section 91-5-3.3.a. provides that "[t]he Division *may* upon written notice of five days require the licensee to present on the form prescribed by the Commissioner to the" advisory board the prescribed medical report or vision examination report forms and any other record or documentation concerning his or her competency to drive that the licensee deems pertinent. (Emphasis added). Before making a final determination, according to 3.3.c., "[t]he Commissioner, after reviewing the Medical Report or Vision Examination Report and the recommendation of the Driver's License Advisory Board," may take any of the actions prescribed by the rule. As indicated above, however, when 3.3.c. is read in conjunction with 3.3.a., the rule indicates that the

Commissioner is required to review the recommendation of the advisory board only in those instances where the Commissioner has chosen, in his or her discretion, to require the licensee to present medical information to the advisory board.

By its clear language, Section 91-5-3.3.a. indicates that the Division "may" require the licensee to present medical information to the advisory board. This Court has previously recognized that the word "may" generally signifies discretion. *See e.g.*, *Powers v. Union Drilling, Inc.*, 194 W. Va. 782, 786, 461 S.E.2d 844, 848 (1995) (commenting that "[t]he legislators' choice of the term 'may' leaves no doubt that availment" of particular identified procedures delineated in statute being addressed by court "was intended to operate in a discretionary, rather than an obligatory manner"). Therefore, it was within the discretion of the DMV whether to require Ms. Peyton to present medical information to the advisory board. Because the DMV, in its discretion, did not require Ms. Peyton to present medical information to the advisory board, there was no recommendation of the advisory board for the DMV to review prior to its determination regarding Ms. Peyton's driving privileges.

There being no *express* requirement in Section 91-5-3 that the DMV submit an applicant's or licensee's medical information to the advisory board prior to making its determination regarding that applicant or licensee, the respondent's argument necessarily hinges on there being an *implied* duty in subdivision 3.3.c., for the DMV to submit the applicant's or licensee's medical information to the advisory board. Specifically,

14

respondent contends that such an implication derives from the section's language indicating that the DMV is to consider the advisory board's recommendation prior to making its determination. We disagree. As indicated above, no such implication is necessary to a reasonable reading of 3.3.c. Rather, when read in the context of other parts of the rule, 3.3.c. requires the DMV to consider the advisory board's recommendation in those instances where the DMV has required the applicant or licensee to submit his or her medical information to the advisory board.

In summary, we find that the 2006 version of Section 91-5-3 did not require the DMV to present Ms. Peyton's medical information to the advisory board for the board's review and recommendation before determining the status of Ms. Peyton's driving privileges. Instead, it was within the DMV's discretion whether to require Ms. Peyton to present medical information to the advisory board. Therefore, because the governmental act or omission which gave rise to the respondent's action against the DMV constituted a discretionary governmental function, the DMV is immune to the respondent's action. Consequently, we find that the circuit court's ruling that the DMV had a nondiscretionary duty to refer Ms. Peyton's medical information to the advisory board to be in error. We furthermore find that the circuit court erred in failing to grant summary judgment to the DMV on the basis of the DMV's qualified immunity.

## IV. CONCLUSION

15

For the foregoing reasons, the June 26, 2015, order of the Circuit Court of Cabell County that denied summary judgment to the DMV is reversed, and we remand for the entry of an order granting the DMV's motion for summary judgment and dismissing the action against it.

Reversed and remanded.

16